**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADAMS APPLE DISTRIBUTING, L.P. | ) | |
| and REPUBLIC TOBACCO, L.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04 C 8225 |
| | ) | |
| BBK TOBACCO & FOODS, INC. d/b/a | ) | |
| HBI INTERNATIONAL and CHARLES | ) | |
| BACHMANN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

**BACKGROUND**

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

as STRONG BOX cases and cigarette papers with a DRUM label. According to plaintiffs, "[d]efendants' use of the . . . Marks is likely to confuse members of the public in that it will lead the public to believe incorrectly that Plaintiffs are the source of, have endorsed or approved of or [are] somehow legitimately associated with Defendants or their goods bearing the . . . Marks, thereby injuring Plaintiffs' name, business and goodwill." (Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count complaint alleging the following: trademark infringement and false designation of origin claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114 (Counts I and II), and state law claims for violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et seq.,* and for unfair competition under Illinois common law (Counts III and IV). Plaintiffs seek an injunction precluding defendants from using the STRONG BOX and DRUM marks in connection with the sale or distribution of any products other than plaintiffs'. The complaint also requests punitive damages and attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed on two other trademarks belonging to Republic, the "2 IN 1" and "JOB" marks, both of which are associated with cigarette rolling papers. Defendants ceased using these marks when Republic demanded that they do so. The complaint does not allege any present infringement (nor seek relief based on any past infringement) of either the 2 IN 1 or JOB marks.

affirmative defenses. Before the court is plaintiffs' motion to strike eight of those defenses.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay." Id.

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense. See Fed. R. Civ. P. 8(a). Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken. Heller, 883 F.2d at 1295. Affirmative defenses must also satisfy the requirements of Rule 12(b)(6). A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact." <u>Heller</u>, 883 F.2d at 1294. Therefore, in evaluating whether an affirmative defense should be stricken, we consider (i) whether the matter is appropriately pleaded as an affirmative defense, (ii) whether is it adequately pleaded, and (iii) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard. <u>See</u> <u>American Top English v. Lexicon Marketing (USA), Inc.</u>, 2004 WL 2271838, at *10 (N.D. Ill. Oct. 4, 2004); <u>LINC Finance Corporation v. Onwuteaka</u>, 1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these standards in mind, we turn to the particulars of plaintiffs' motion.

Plaintiffs move to strike defendants' first, third, fourth, fifth, sixth, seventh, tenth and thirteenth affirmative defenses. The first affirmative defense states:

> The Complaint, and each cause of action thereof, fails to state a cause of action upon which relief may be granted. The Complaint, in whole or in part, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as against Charles Bachman. Charles Bachman is a shareholder and the president of HBI, a corporation organized under the laws of Arizona. As such, he is not personally liable for the alleged activities of the corporation complained of by plaintiffs.

This defense really puts forth two defenses: first, that the complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and shareholders of a corporation are not personally liable for the corporation's illegal conduct.[2]  As to the first part of the defense, plaintiffs contend that a "failure to state a claim" argument is not properly pled as an affirmative defense.  We recognize that pleading a complaint's legal insufficiency as a defense may appear incongruent with the traditional definition of an affirmative defense: "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and [a failure to state a claim] is not raised by a negative defense, but instead is properly raised through a Rule 12(b)(6) motion to dismiss." Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983). Yet, the Federal Rules of Civil Procedure expressly authorize a defense alleging a failure to state a claim.  See Builders Bank v. First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D. Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules' Appendix of Forms includes the following among its list of "model" affirmative defenses: "The complaint fails to state a claim against defendant upon which relief can be granted." Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or "Bachmann."  Defendants use both variations in their response to plaintiffs' motion.

Form 20.  And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84.  Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." Builders Bank, 2004 WL 626827, at *3.  Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim.  It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement.  This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.)  In Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947. Dangler remains good law. See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986). Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound. Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim." The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, i.e., acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See Heller, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this defense is legally untenable because Lanham Act claims are not subject to a statute of limitations. Parties defending Lanham Act claims must rely instead on a laches defense. See Hot Wax v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999). Defendants counter that even if statutes of limitations do not apply to the Lanham Act, the statutes are relevant to the court's determination of whether a presumption of laches should apply. See Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793-94 (7th Cir. 2002). This is true, but any argument regarding the statutes' relevance to a laches inquiry is preserved by defendants' twelfth affirmative defense which properly asserts a laches defense. The fourth affirmative defense is stricken as to the Lanham Act counts. It will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs' alleged marks 2 IN 1 and STRONG BOX are descriptive or generic." First, as noted above, the complaint does allege any present infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is descriptive or generic is irrelevant to whether defendants are infringing on the DRUM or STRONG BOX marks. The allegation related to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend that the defense is flawed because the mark is incontestable. It is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985). However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product. See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003). "Whether a term is generic or can be trademarked is a question of fact." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998). Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis. See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion."). Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified. Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution." At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law. Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (citing Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks. Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense." See Sanchez v. La Rosa Del Monte Express, Inc., 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994). The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive damages or attorneys' fees against the Defendant in this case would be unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution ("Due Process") and the Eighth Amendment of the United States Constitution ("Excessive Punishment"), for the following reasons among others: (i) the award is excessive or disproportionate to the award of compensatory damages; (ii) the award is made absent a finding that Defendants' conduct was or is reprehensible; or (iii) the award is made without affording Defendants the safeguards afforded defendants in penal or criminal proceedings, including without limitation the protection against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling. Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires." American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

> confront adverse witnesses, the requirement
> of a unanimous jury, or the application of
> the heightened burden of clear and
> convincing evidence.

To the extent this defense argues that *any* award of punitive damages or attorneys' fees is precluded by the Fifth, Eighth and Fourteenth Amendments, the argument is legally baseless. <u>See</u> <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If, on the other hand, the argument is that a specific award is unconstitutionally excessive, it seems entirely premature. Plaintiffs have not cited any authority stating that such a defense is improper. However, we think it should be stricken because it is not addressed to any claim but to a hypothetical excessive damage award that is not requested in the claims that are made. We find it therefore to be "immaterial" and "impertinent," and it is stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike affirmative defenses [22-1] is granted in part, and denied in part. The sixth and seventh affirmative defenses will stand as presently pled, the fourth and fifth defenses will stand as modified in this opinion, and the first, third, tenth and thirteenth defenses are hereby stricken. The first and third affirmative defenses are stricken without prejudice to a re-pleading consistent with, and within 20 days of, this opinion.

DATE:   July 12, 2005

ENTER:  _____

John F. Grady, United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ADAMS APPLE DISTRIBUTING, L.P.        )
and REPUBLIC TOBACCO, L.P.,           )
                                      )
          Plaintiffs,                 )
                                      )
          v.                          )      No. 04 C 8225
                                      )
BBK TOBACCO & FOODS, INC. d/b/a       )
HBI INTERNATIONAL and CHARLES         )
BACHMANN,                             )
                                      )
          Defendants.                 )


## MEMORANDUM OPINION

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

## BACKGROUND

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

as STRONG BOX cases and cigarette papers with a DRUM label. According to plaintiffs, "[d]efendants' use of the . . . Marks is likely to confuse members of the public in that it will lead the public to believe incorrectly that Plaintiffs are the source of, have endorsed or approved of or [are] somehow legitimately associated with Defendants or their goods bearing the . . . Marks, thereby injuring Plaintiffs' name, business and goodwill." (Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count complaint alleging the following: trademark infringement and false designation of origin claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114 (Counts I and II), and state law claims for violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et seq.,* and for unfair competition under Illinois common law (Counts III and IV). Plaintiffs seek an injunction precluding defendants from using the STRONG BOX and DRUM marks in connection with the sale or distribution of any products other than plaintiffs'. The complaint also requests punitive damages and attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed on two other trademarks belonging to Republic, the "2 IN 1" and "JOB" marks, both of which are associated with cigarette rolling papers. Defendants ceased using these marks when Republic demanded that they do so. The complaint does not allege any present infringement (nor seek relief based on any past infringement) of either the 2 IN 1 or JOB marks.

affirmative defenses. Before the court is plaintiffs' motion to strike eight of those defenses.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay." Id.

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense. See Fed. R. Civ. P. 8(a). Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken. Heller, 883 F.2d at 1295. Affirmative defenses must also satisfy the requirements of Rule 12(b)(6). A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or
if they present questions of law or fact." Heller, 883 F.2d at
1294. Therefore, in evaluating whether an affirmative defense
should be stricken, we consider (i) whether the matter is
appropriately pleaded as an affirmative defense, (ii) whether is it
adequately pleaded, and (iii) whether it is legally sufficient to
state a claim under the Rule 12(b)(6) standard. See American Top
English v. Lexicon Marketing (USA), Inc., 2004 WL 2271838, at *10
(N.D. Ill. Oct. 4, 2004); LINC Finance Corporation v. Onwuteaka,
1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these
standards in mind, we turn to the particulars of plaintiffs'
motion.

Plaintiffs move to strike defendants' first, third, fourth,
fifth, sixth, seventh, tenth and thirteenth affirmative defenses.
The first affirmative defense states:

> The Complaint, and each cause of action
> thereof, fails to state a cause of action
> upon which relief may be granted. The
> Complaint, in whole or in part, should be
> dismissed pursuant to Federal Rule of Civil
> Procedure 12(b)(6) as against Charles
> Bachman. Charles Bachman is a shareholder
> and the president of HBI, a corporation
> organized under the laws of Arizona. As
> such, he is not personally liable for the
> alleged activities of the corporation
> complained of by plaintiffs.

This defense really puts forth two defenses: first, that the
complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and shareholders of a corporation are not personally liable for the corporation's illegal conduct.[2]  As to the first part of the defense, plaintiffs contend that a "failure to state a claim" argument is not properly pled as an affirmative defense.  We recognize that pleading a complaint's legal insufficiency as a defense may appear incongruent with the traditional definition of an affirmative defense: "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and [a failure to state a claim] is not raised by a negative defense, but instead is properly raised through a Rule 12(b)(6) motion to dismiss." Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983). Yet, the Federal Rules of Civil Procedure expressly authorize a defense alleging a failure to state a claim.  See Builders Bank v. First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D. Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules' Appendix of Forms includes the following among its list of "model" affirmative defenses: "The complaint fails to state a claim against defendant upon which relief can be granted." Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or "Bachmann."  Defendants use both variations in their response to plaintiffs' motion.

Form 20. And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84. Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." Builders Bank, 2004 WL 626827, at *3. Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim. It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement. This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.) In Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947. Dangler remains good law. See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986). Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound. Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim." The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, *i.e.*, acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See <u>Heller</u>, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this
defense is legally untenable because Lanham Act claims are not
subject to a statute of limitations. Parties defending Lanham Act
claims must rely instead on a laches defense. See Hot Wax v.
Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999). Defendants
counter that even if statutes of limitations do not apply to the
Lanham Act, the statutes are relevant to the court's determination
of whether a presumption of laches should apply. See Chattanoga
Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793-94 (7th Cir. 2002).
This is true, but any argument regarding the statutes' relevance to
a laches inquiry is preserved by defendants' twelfth affirmative
defense which properly asserts a laches defense. The fourth
affirmative defense is stricken as to the Lanham Act counts. It
will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs'
alleged marks 2 IN 1 and STRONG BOX are descriptive or generic."
First, as noted above, the complaint does allege any present
infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is
descriptive or generic is irrelevant to whether defendants are
infringing on the DRUM or STRONG BOX marks. The allegation related
to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend
that the defense is flawed because the mark is incontestable. It
is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid.  See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985).  However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product.  See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003).  "Whether a term is generic or can be trademarked is a question of fact."  Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998).  Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis. See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion.").  Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified.  Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution."  At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law.  Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (citing Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks. Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense." See <u>Sanchez v. La Rosa Del Monte Express, Inc.</u>, 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994). The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive damages or attorneys' fees against the Defendant in this case would be unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution ("Due Process") and the Eighth Amendment of the United States Constitution ("Excessive Punishment"), for the following reasons among others: (i) the award is excessive or disproportionate to the award of compensatory damages; (ii) the award is made absent a finding that Defendants' conduct was or is reprehensible; or (iii) the award is made without affording Defendants the safeguards afforded defendants in penal or criminal proceedings, including without limitation the protection against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling. Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires." <u>American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC</u>, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

> confront adverse witnesses, the requirement
> of a unanimous jury, or the application of
> the heightened burden of clear and
> convincing evidence.

To the extent this defense argues that *any* award of punitive damages or attorneys' fees is precluded by the Fifth, Eighth and Fourteenth Amendments, the argument is legally baseless. <u>See</u> <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If, on the other hand, the argument is that a specific award is unconstitutionally excessive, it seems entirely premature. Plaintiffs have not cited any authority stating that such a defense is improper. However, we think it should be stricken because it is not addressed to any claim but to a hypothetical excessive damage award that is not requested in the claims that are made. We find it therefore to be "immaterial" and "impertinent," and it is stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike affirmative defenses [22-1] is granted in part, and denied in part. The sixth and seventh affirmative defenses will stand as presently pled, the fourth and fifth defenses will stand as modified in this opinion, and the first, third, tenth and thirteenth defenses are hereby stricken. The first and third affirmative defenses are stricken without prejudice to a re-pleading consistent with, and within 20 days of, this opinion.

DATE:   July 12, 2005

ENTER: _____

John F. Grady, United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ADAMS APPLE DISTRIBUTING, L.P.      )
and REPUBLIC TOBACCO, L.P.,         )
                                    )
          Plaintiffs,               )
                                    )
          v.                        )        No. 04 C 8225
                                    )
BBK TOBACCO & FOODS, INC. d/b/a     )
HBI INTERNATIONAL and CHARLES       )
BACHMANN,                           )
                                    )
          Defendants.               )


**MEMORANDUM OPINION**

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

**BACKGROUND**

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

as STRONG BOX cases and cigarette papers with a DRUM label.
According to plaintiffs, "[d]efendants' use of the . . . Marks is
likely to confuse members of the public in that it will lead the
public to believe incorrectly that Plaintiffs are the source of,
have endorsed or approved of or [are] somehow legitimately
associated with Defendants or their goods bearing the . . . Marks,
thereby injuring Plaintiffs' name, business and goodwill."
(Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count
complaint alleging the following: trademark infringement and false
designation of origin claims under the Lanham Act, 15 U.S.C. §§
1125(a) and 1114 (Counts I and II), and state law claims for
violation of the Illinois Deceptive Trade Practices Act, 815 ILCS
§§ 510/1, *et seq.,* and for unfair competition under Illinois common
law (Counts III and IV).  Plaintiffs seek an injunction precluding
defendants from using the STRONG BOX and DRUM marks in connection
with the sale or distribution of any products other than
plaintiffs'.  The complaint also requests punitive damages and
attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed
on two other trademarks belonging to Republic, the "2 IN 1" and "JOB"
marks, both of which are associated with cigarette rolling papers.
Defendants ceased using these marks when Republic demanded that they
do so.  The complaint does not allege any present infringement (nor
seek relief based on any past infringement) of either the 2 IN 1 or
JOB marks.

affirmative defenses.  Before the court is plaintiffs' motion to strike eight of those defenses.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay.  <u>See</u> <u>Heller Fin., Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989).  However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay."  <u>Id.</u>

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense.  <u>See</u> Fed. R. Civ. P. 8(a).  Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken.  <u>Heller</u>, 883 F.2d at 1295.  Affirmative defenses must also satisfy the requirements of Rule 12(b)(6).  A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." <u>Williams v. Jader Fuel Co.</u>, 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted).  Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact." Heller, 883 F.2d at 1294. Therefore, in evaluating whether an affirmative defense should be stricken, we consider (i) whether the matter is appropriately pleaded as an affirmative defense, (ii) whether is it adequately pleaded, and (iii) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard. See American Top English v. Lexicon Marketing (USA), Inc., 2004 WL 2271838, at *10 (N.D. Ill. Oct. 4, 2004); LINC Finance Corporation v. Onwuteaka, 1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these standards in mind, we turn to the particulars of plaintiffs' motion.

Plaintiffs move to strike defendants' first, third, fourth, fifth, sixth, seventh, tenth and thirteenth affirmative defenses. The first affirmative defense states:

> The Complaint, and each cause of action thereof, fails to state a cause of action upon which relief may be granted. The Complaint, in whole or in part, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as against Charles Bachman. Charles Bachman is a shareholder and the president of HBI, a corporation organized under the laws of Arizona. As such, he is not personally liable for the alleged activities of the corporation complained of by plaintiffs.

This defense really puts forth two defenses: first, that the complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and
shareholders of a corporation are not personally liable for the
corporation's illegal conduct.[2]  As to the first part of the
defense, plaintiffs contend that a "failure to state a claim"
argument is not properly pled as an affirmative defense.  We
recognize that pleading a complaint's legal insufficiency as a
defense may appear incongruent with the traditional definition of
an affirmative defense: "a true affirmative defense raises matters
outside the scope of plaintiff's prima facie case and [a failure to
state a claim] is not raised by a negative defense, but instead is
properly raised through a Rule 12(b)(6) motion to dismiss."
Instituto Nacional de Comercialization Agricola v. Continental Ill.
Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983).
Yet, the Federal Rules of Civil Procedure expressly authorize a
defense alleging a failure to state a claim.  See Builders Bank v.
First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D.
Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3
(N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL
60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules'
Appendix of Forms includes the following among its list of "model"
affirmative defenses: "The complaint fails to state a claim against
defendant upon which relief can be granted."  Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or
"Bachmann."  Defendants use both variations in their response to
plaintiffs' motion.

Form 20. And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84. Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." <u>Builders Bank</u>, 2004 WL 626827, at *3. Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim. It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement. This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.) In <u>Dangler v. Imperial Machine Co.</u>, 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947. Dangler remains good law. See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986). Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound. Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim." The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, *i.e.*, acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See <u>Heller</u>, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this defense is legally untenable because Lanham Act claims are not subject to a statute of limitations. Parties defending Lanham Act claims must rely instead on a laches defense. See Hot Wax v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999). Defendants counter that even if statutes of limitations do not apply to the Lanham Act, the statutes are relevant to the court's determination of whether a presumption of laches should apply. See Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793-94 (7th Cir. 2002). This is true, but any argument regarding the statutes' relevance to a laches inquiry is preserved by defendants' twelfth affirmative defense which properly asserts a laches defense. The fourth affirmative defense is stricken as to the Lanham Act counts. It will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs' alleged marks 2 IN 1 and STRONG BOX are descriptive or generic." First, as noted above, the complaint does allege any present infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is descriptive or generic is irrelevant to whether defendants are infringing on the DRUM or STRONG BOX marks. The allegation related to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend that the defense is flawed because the mark is incontestable. It is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid.  See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985).  However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product.  See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003).  "Whether a term is generic or can be trademarked is a question of fact."  Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998).  Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis. See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion.").  Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified.  Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution."  At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law.  Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (citing Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks. Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense." See Sanchez v. La Rosa Del Monte Express, Inc., 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994). The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive damages or attorneys' fees against the Defendant in this case would be unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution ("Due Process") and the Eighth Amendment of the United States Constitution ("Excessive Punishment"), for the following reasons among others: (i) the award is excessive or disproportionate to the award of compensatory damages; (ii) the award is made absent a finding that Defendants' conduct was or is reprehensible; or (iii) the award is made without affording Defendants the safeguards afforded defendants in penal or criminal proceedings, including without limitation the protection against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling. Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires." American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

> confront adverse witnesses, the requirement
> of a unanimous jury, or the application of
> the heightened burden of clear and
> convincing evidence.

To the extent this defense argues that *any* award of punitive damages or attorneys' fees is precluded by the Fifth, Eighth and Fourteenth Amendments, the argument is legally baseless. <u>See</u> <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If, on the other hand, the argument is that a specific award is unconstitutionally excessive, it seems entirely premature. Plaintiffs have not cited any authority stating that such a defense is improper. However, we think it should be stricken because it is not addressed to any claim but to a hypothetical excessive damage award that is not requested in the claims that are made. We find it therefore to be "immaterial" and "impertinent," and it is stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike affirmative defenses [22-1] is granted in part, and denied in part. The sixth and seventh affirmative defenses will stand as presently pled, the fourth and fifth defenses will stand as modified in this opinion, and the first, third, tenth and thirteenth defenses are hereby stricken. The first and third affirmative defenses are stricken without prejudice to a re-pleading consistent with, and within 20 days of, this opinion.

DATE:  July 12, 2005

ENTER:

_____

John F. Grady, United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ADAMS APPLE DISTRIBUTING, L.P.          )
and REPUBLIC TOBACCO, L.P.,             )
                                        )
          Plaintiffs,                   )
                                        )
          v.                            )          No. 04 C 8225
                                        )
BBK TOBACCO & FOODS, INC. d/b/a         )
HBI INTERNATIONAL and CHARLES           )
BACHMANN,                               )
                                        )
          Defendants.                   )


## MEMORANDUM OPINION

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

## BACKGROUND

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

as STRONG BOX cases and cigarette papers with a DRUM label. According to plaintiffs, "[d]efendants' use of the . . . Marks is likely to confuse members of the public in that it will lead the public to believe incorrectly that Plaintiffs are the source of, have endorsed or approved of or [are] somehow legitimately associated with Defendants or their goods bearing the . . . Marks, thereby injuring Plaintiffs' name, business and goodwill." (Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count complaint alleging the following: trademark infringement and false designation of origin claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114 (Counts I and II), and state law claims for violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1, *et seq.,* and for unfair competition under Illinois common law (Counts III and IV). Plaintiffs seek an injunction precluding defendants from using the STRONG BOX and DRUM marks in connection with the sale or distribution of any products other than plaintiffs'. The complaint also requests punitive damages and attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed on two other trademarks belonging to Republic, the "2 IN 1" and "JOB" marks, both of which are associated with cigarette rolling papers. Defendants ceased using these marks when Republic demanded that they do so. The complaint does not allege any present infringement (nor seek relief based on any past infringement) of either the 2 IN 1 or JOB marks.

affirmative defenses. Before the court is plaintiffs' motion to strike eight of those defenses.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay." Id.

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense. See Fed. R. Civ. P. 8(a). Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken. Heller, 883 F.2d at 1295. Affirmative defenses must also satisfy the requirements of Rule 12(b)(6). A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact." <u>Heller</u>, 883 F.2d at 1294. Therefore, in evaluating whether an affirmative defense should be stricken, we consider (i) whether the matter is appropriately pleaded as an affirmative defense, (ii) whether is it adequately pleaded, and (iii) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard. <u>See</u> <u>American Top English v. Lexicon Marketing (USA), Inc.</u>, 2004 WL 2271838, at *10 (N.D. Ill. Oct. 4, 2004); <u>LINC Finance Corporation v. Onwuteaka</u>, 1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these standards in mind, we turn to the particulars of plaintiffs' motion.

Plaintiffs move to strike defendants' first, third, fourth, fifth, sixth, seventh, tenth and thirteenth affirmative defenses. The first affirmative defense states:

> The Complaint, and each cause of action thereof, fails to state a cause of action upon which relief may be granted. The Complaint, in whole or in part, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as against Charles Bachman. Charles Bachman is a shareholder and the president of HBI, a corporation organized under the laws of Arizona. As such, he is not personally liable for the alleged activities of the corporation complained of by plaintiffs.

This defense really puts forth two defenses: first, that the complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and shareholders of a corporation are not personally liable for the corporation's illegal conduct.[2]  As to the first part of the defense, plaintiffs contend that a "failure to state a claim" argument is not properly pled as an affirmative defense.  We recognize that pleading a complaint's legal insufficiency as a defense may appear incongruent with the traditional definition of an affirmative defense: "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and [a failure to state a claim] is not raised by a negative defense, but instead is properly raised through a Rule 12(b)(6) motion to dismiss." Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983). Yet, the Federal Rules of Civil Procedure expressly authorize a defense alleging a failure to state a claim.  See Builders Bank v. First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D. Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules' Appendix of Forms includes the following among its list of "model" affirmative defenses: "The complaint fails to state a claim against defendant upon which relief can be granted." Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or "Bachmann."  Defendants use both variations in their response to plaintiffs' motion.

Form 20. And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84. Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." Builders Bank, 2004 WL 626827, at *3. Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim. It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement. This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.) In Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947.  Dangler remains good law.  See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986).  Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound.  Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim."  The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, *i.e.*, acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See <u>Heller</u>, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this defense is legally untenable because Lanham Act claims are not subject to a statute of limitations. Parties defending Lanham Act claims must rely instead on a laches defense. <u>See</u> <u>Hot Wax v. Turtle Wax, Inc.</u>, 191 F.3d 813, 821 (7th Cir. 1999). Defendants counter that even if statutes of limitations do not apply to the Lanham Act, the statutes are relevant to the court's determination of whether a presumption of laches should apply. <u>See</u> <u>Chattanoga Mfg., Inc. v. Nike, Inc.</u>, 301 F.3d 789, 793-94 (7th Cir. 2002). This is true, but any argument regarding the statutes' relevance to a laches inquiry is preserved by defendants' twelfth affirmative defense which properly asserts a laches defense. The fourth affirmative defense is stricken as to the Lanham Act counts. It will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs' alleged marks 2 IN 1 and STRONG BOX are descriptive or generic." First, as noted above, the complaint does allege any present infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is descriptive or generic is irrelevant to whether defendants are infringing on the DRUM or STRONG BOX marks. The allegation related to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend that the defense is flawed because the mark is incontestable. It is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985). However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product. See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003). "Whether a term is generic or can be trademarked is a question of fact." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998). Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis. See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion."). Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified. Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution." At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law. Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (citing Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks.  Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense."  See <u>Sanchez v. La Rosa Del Monte Express, Inc.</u>, 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994).  The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive
> damages or attorneys' fees against the
> Defendant in this case would be
> unconstitutional under the Fifth and
> Fourteenth Amendments of the United States
> Constitution ("Due Process") and the Eighth
> Amendment of the United States Constitution
> ("Excessive Punishment"), for the following
> reasons among others: (i) the award is
> excessive or disproportionate to the award
> of compensatory damages; (ii) the award is
> made absent a finding that Defendants'
> conduct was or is reprehensible; or (iii)
> the award is made without affording
> Defendants the safeguards afforded
> defendants in penal or criminal proceedings,
> including without limitation the protection
> against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling.  Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires."  <u>American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC</u>, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

> confront adverse witnesses, the requirement
> of a unanimous jury, or the application of
> the heightened burden of clear and
> convincing evidence.

To the extent this defense argues that *any* award of punitive damages or attorneys' fees is precluded by the Fifth, Eighth and Fourteenth Amendments, the argument is legally baseless. <u>See</u> <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If, on the other hand, the argument is that a specific award is unconstitutionally excessive, it seems entirely premature. Plaintiffs have not cited any authority stating that such a defense is improper. However, we think it should be stricken because it is not addressed to any claim but to a hypothetical excessive damage award that is not requested in the claims that are made. We find it therefore to be "immaterial" and "impertinent," and it is stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to strike affirmative defenses [22-1] is granted in part, and denied in part. The sixth and seventh affirmative defenses will stand as presently pled, the fourth and fifth defenses will stand as modified in this opinion, and the first, third, tenth and thirteenth defenses are hereby stricken. The first and third affirmative defenses are stricken without prejudice to a re-pleading consistent with, and within 20 days of, this opinion.

DATE:   July 12, 2005

ENTER:  _____

John F. Grady, United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADAMS APPLE DISTRIBUTING, L.P. | ) | |
| and REPUBLIC TOBACCO, L.P., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04 C 8225 |
| | ) | |
| BBK TOBACCO & FOODS, INC. d/b/a | ) | |
| HBI INTERNATIONAL and CHARLES | ) | |
| BACHMANN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

**BACKGROUND**

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

as STRONG BOX cases and cigarette papers with a DRUM label.
According to plaintiffs, "[d]efendants' use of the . . . Marks is
likely to confuse members of the public in that it will lead the
public to believe incorrectly that Plaintiffs are the source of,
have endorsed or approved of or [are] somehow legitimately
associated with Defendants or their goods bearing the . . . Marks,
thereby injuring Plaintiffs' name, business and goodwill."
(Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count
complaint alleging the following: trademark infringement and false
designation of origin claims under the Lanham Act, 15 U.S.C. §§
1125(a) and 1114 (Counts I and II), and state law claims for
violation of the Illinois Deceptive Trade Practices Act, 815 ILCS
§§ 510/1, *et seq.,* and for unfair competition under Illinois common
law (Counts III and IV). Plaintiffs seek an injunction precluding
defendants from using the STRONG BOX and DRUM marks in connection
with the sale or distribution of any products other than
plaintiffs'. The complaint also requests punitive damages and
attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed
on two other trademarks belonging to Republic, the "2 IN 1" and "JOB"
marks, both of which are associated with cigarette rolling papers.
Defendants ceased using these marks when Republic demanded that they
do so. The complaint does not allege any present infringement (nor
seek relief based on any past infringement) of either the 2 IN 1 or
JOB marks.

affirmative defenses.  Before the court is plaintiffs' motion to strike eight of those defenses.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay.  <u>See</u> <u>Heller Fin., Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989).  However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay."  <u>Id.</u>

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense.  <u>See</u> Fed. R. Civ. P. 8(a).  Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken.  <u>Heller</u>, 883 F.2d at 1295.  Affirmative defenses must also satisfy the requirements of Rule 12(b)(6).  A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." <u>Williams v. Jader Fuel Co.</u>, 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted).  Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or
if they present questions of law or fact." Heller, 883 F.2d at
1294. Therefore, in evaluating whether an affirmative defense
should be stricken, we consider (i) whether the matter is
appropriately pleaded as an affirmative defense, (ii) whether is it
adequately pleaded, and (iii) whether it is legally sufficient to
state a claim under the Rule 12(b)(6) standard. See American Top
English v. Lexicon Marketing (USA), Inc., 2004 WL 2271838, at *10
(N.D. Ill. Oct. 4, 2004); LINC Finance Corporation v. Onwuteaka,
1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these
standards in mind, we turn to the particulars of plaintiffs'
motion.

Plaintiffs move to strike defendants' first, third, fourth,
fifth, sixth, seventh, tenth and thirteenth affirmative defenses.
The first affirmative defense states:

> The Complaint, and each cause of action
> thereof, fails to state a cause of action
> upon which relief may be granted. The
> Complaint, in whole or in part, should be
> dismissed pursuant to Federal Rule of Civil
> Procedure 12(b)(6) as against Charles
> Bachman. Charles Bachman is a shareholder
> and the president of HBI, a corporation
> organized under the laws of Arizona. As
> such, he is not personally liable for the
> alleged activities of the corporation
> complained of by plaintiffs.

This defense really puts forth two defenses: first, that the
complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and shareholders of a corporation are not personally liable for the corporation's illegal conduct.[2]  As to the first part of the defense, plaintiffs contend that a "failure to state a claim" argument is not properly pled as an affirmative defense.  We recognize that pleading a complaint's legal insufficiency as a defense may appear incongruent with the traditional definition of an affirmative defense: "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and [a failure to state a claim] is not raised by a negative defense, but instead is properly raised through a Rule 12(b)(6) motion to dismiss." Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983). Yet, the Federal Rules of Civil Procedure expressly authorize a defense alleging a failure to state a claim.  See Builders Bank v. First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D. Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules' Appendix of Forms includes the following among its list of "model" affirmative defenses: "The complaint fails to state a claim against defendant upon which relief can be granted." Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or "Bachmann."  Defendants use both variations in their response to plaintiffs' motion.

Form 20.  And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84.  Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." <u>Builders Bank</u>, 2004 WL 626827, at *3.  Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim.  It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement.  This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.)  In <u>Dangler v. Imperial Machine Co.</u>, 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947.  Dangler remains good law.  See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986).  Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound.  Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim."  The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, *i.e.*, acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See <u>Heller</u>, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this defense is legally untenable because Lanham Act claims are not subject to a statute of limitations. Parties defending Lanham Act claims must rely instead on a laches defense. See Hot Wax v. Turtle Wax, Inc., 191 F.3d 813, 821 (7th Cir. 1999). Defendants counter that even if statutes of limitations do not apply to the Lanham Act, the statutes are relevant to the court's determination of whether a presumption of laches should apply. See Chattanoga Mfg., Inc. v. Nike, Inc., 301 F.3d 789, 793-94 (7th Cir. 2002). This is true, but any argument regarding the statutes' relevance to a laches inquiry is preserved by defendants' twelfth affirmative defense which properly asserts a laches defense. The fourth affirmative defense is stricken as to the Lanham Act counts. It will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs' alleged marks 2 IN 1 and STRONG BOX are descriptive or generic." First, as noted above, the complaint does allege any present infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is descriptive or generic is irrelevant to whether defendants are infringing on the DRUM or STRONG BOX marks. The allegation related to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend that the defense is flawed because the mark is incontestable. It is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985). However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product. See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003). "Whether a term is generic or can be trademarked is a question of fact." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998). Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis. See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion."). Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified. Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution." At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law. Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." <u>Pure Imagination, Inc. v. Pure Imagination Studios, Inc.</u>, 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (<u>citing</u> <u>Safeway Stores, Inc. v. Safeway Quality Foods, Inc.</u>, 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks. Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense." See Sanchez v. La Rosa Del Monte Express, Inc., 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994). The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive damages or attorneys' fees against the Defendant in this case would be unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution ("Due Process") and the Eighth Amendment of the United States Constitution ("Excessive Punishment"), for the following reasons among others: (i) the award is excessive or disproportionate to the award of compensatory damages; (ii) the award is made absent a finding that Defendants' conduct was or is reprehensible; or (iii) the award is made without affording Defendants the safeguards afforded defendants in penal or criminal proceedings, including without limitation the protection against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling. Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires." American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

confront adverse witnesses, the requirement
of a unanimous jury, or the application of
the heightened burden of clear and
convincing evidence.

To the extent this defense argues that *any* award of punitive damages or attorneys' fees is precluded by the Fifth, Eighth and Fourteenth Amendments, the argument is legally baseless. <u>See</u> <u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If, on the other hand, the argument is that a specific award is unconstitutionally excessive, it seems entirely premature. Plaintiffs have not cited any authority stating that such a defense is improper. However, we think it should be stricken because it is not addressed to any claim but to a hypothetical excessive damage award that is not requested in the claims that are made. We find it therefore to be "immaterial" and "impertinent," and it is stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to strike affirmative defenses [22-1] is granted in part, and denied in part. The sixth and seventh affirmative defenses will stand as presently pled, the fourth and fifth defenses will stand as modified in this opinion, and the first, third, tenth and thirteenth defenses are hereby stricken. The first and third affirmative defenses are stricken without prejudice to a re-pleading consistent with, and within 20 days of, this opinion.

DATE:   July 12, 2005

ENTER:  _____

John F. Grady, United States District Judge

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ADAMS APPLE DISTRIBUTING, L.P.          )
and REPUBLIC TOBACCO, L.P.,             )
                                        )
          Plaintiffs,                   )
                                        )
          v.                            )        No. 04 C 8225
                                        )
BBK TOBACCO & FOODS, INC. d/b/a         )
HBI INTERNATIONAL and CHARLES           )
BACHMANN,                               )
                                        )
          Defendants.                   )


### <u>MEMORANDUM OPINION</u>

Before the court is plaintiffs' motion to strike affirmative defenses. For the reasons stated below, the motion is granted in part, and denied in part.

### <u>BACKGROUND</u>

This is a trademark infringement action brought by Adams Apple Distributing, L.P. and Republic Tobacco, L.P. ("Adams Apple" and "Republic," and together, "plaintiffs") against BBK Tobacco & Foods, Inc. d/b/a HBI International and Charles Bachmann ("HBI" and "Bachmann," and together, "defendants"). The following facts, drawn from the complaint, are taken as true for present purposes. Plaintiffs, both Illinois partnerships, distribute and sell a wide variety of tobaccos and other smoking-related products to customers nationwide. Plaintiffs sell their goods through both wholesalers

and retail stores. HBI, an Arizona company, is one such wholesaler, and Bachmann is, on information and belief, HBI's sole officer and shareholder.

Among the products sold by plaintiffs are Adams Apple's STRONG BOX-brand cigarette holders and Republic's DRUM-brand smoking tobacco. Since approximately 1992, Adams Apple has continuously used the mark "STRONG BOX" on its cigarette holder packaging and on related advertising materials. Adams Apple's extensive use and promotion of the STRONG BOX mark has given the mark a secondary meaning in the marketplace signifying Adams Apple. On March 7, 1995, Adams Apple obtained a federal trademark registration on the STRONG BOX mark for use in connection with cigarette holders and dispensers.

For "several" years, Republic has continuously used the mark "DRUM" on its cigarette tobacco packaging and on related print materials. A secondary meaning has attached to the DRUM mark identifying it with Republic. On October 10, 2000, Republic obtained a federal trademark registration on the DRUM mark for use in connection with smoking tobacco.

Defendants sell products, including those distributed by plaintiffs, through a website and a mail-order catalog. At least as of 2004, defendants have been selling, without plaintiffs' permission, articles that are not plaintiffs' but nonetheless bear their registered marks, specifically cigarette holders identified

-3-

as STRONG BOX cases and cigarette papers with a DRUM label.
According to plaintiffs, "[d]efendants' use of the . . . Marks is
likely to confuse members of the public in that it will lead the
public to believe incorrectly that Plaintiffs are the source of,
have endorsed or approved of or [are] somehow legitimately
associated with Defendants or their goods bearing the . . . Marks,
thereby injuring Plaintiffs' name, business and goodwill."
(Compl., ¶¶ 26, 27.)[1]

On these alleged facts, plaintiffs bring a four-count
complaint alleging the following: trademark infringement and false
designation of origin claims under the Lanham Act, 15 U.S.C. §§
1125(a) and 1114 (Counts I and II), and state law claims for
violation of the Illinois Deceptive Trade Practices Act, 815 ILCS
§§ 510/1, *et seq.,* and for unfair competition under Illinois common
law (Counts III and IV).  Plaintiffs seek an injunction precluding
defendants from using the STRONG BOX and DRUM marks in connection
with the sale or distribution of any products other than
plaintiffs'.  The complaint also requests punitive damages and
attorneys' fees.

Defendants have filed an answer, a counterclaim and fifteen

---

[1]The complaint states that defendants have previously infringed
on two other trademarks belonging to Republic, the "2 IN 1" and "JOB"
marks, both of which are associated with cigarette rolling papers.
Defendants ceased using these marks when Republic demanded that they
do so.  The complaint does not allege any present infringement (nor
seek relief based on any past infringement) of either the 2 IN 1 or
JOB marks.

affirmative defenses. Before the court is plaintiffs' motion to strike eight of those defenses.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored because they often serve no purpose other than delay. See Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989). However, where the motions "remove unnecessary clutter from the case, they serve to expedite, not delay." Id.

Affirmative defenses are pleadings and therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Affirmative defenses must set forth a "short and plain statement" of the defense. See Fed. R. Civ. P. 8(a). Defenses that are "bare bones conclusory allegations" do not meet this standard and must be stricken. Heller, 883 F.2d at 1295. Affirmative defenses must also satisfy the requirements of Rule 12(b)(6). A motion to strike will be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and quotation marks omitted). Put another way, defenses

will not be stricken "if they are sufficient as a matter of law or if they present questions of law or fact." Heller, 883 F.2d at 1294. Therefore, in evaluating whether an affirmative defense should be stricken, we consider (i) whether the matter is appropriately pleaded as an affirmative defense, (ii) whether is it adequately pleaded, and (iii) whether it is legally sufficient to state a claim under the Rule 12(b)(6) standard. See American Top English v. Lexicon Marketing (USA), Inc., 2004 WL 2271838, at *10 (N.D. Ill. Oct. 4, 2004); LINC Finance Corporation v. Onwuteaka, 1995 WL 708575, at *3 (N.D. Ill. Nov. 30, 1995). With these standards in mind, we turn to the particulars of plaintiffs' motion.

Plaintiffs move to strike defendants' first, third, fourth, fifth, sixth, seventh, tenth and thirteenth affirmative defenses. The first affirmative defense states:

> The Complaint, and each cause of action thereof, fails to state a cause of action upon which relief may be granted. The Complaint, in whole or in part, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as against Charles Bachman. Charles Bachman is a shareholder and the president of HBI, a corporation organized under the laws of Arizona. As such, he is not personally liable for the alleged activities of the corporation complained of by plaintiffs.

This defense really puts forth two defenses: first, that the complaint, as a whole, fails to state a claim, and second, that the

counts against Bachmann fail to state a claim because officers and shareholders of a corporation are not personally liable for the corporation's illegal conduct.[2]  As to the first part of the defense, plaintiffs contend that a "failure to state a claim" argument is not properly pled as an affirmative defense.  We recognize that pleading a complaint's legal insufficiency as a defense may appear incongruent with the traditional definition of an affirmative defense: "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and [a failure to state a claim] is not raised by a negative defense, but instead is properly raised through a Rule 12(b)(6) motion to dismiss." Instituto Nacional de Comercialization Agricola v. Continental Ill. Nat'l Bank & Trust Co., 576 F.Supp. 985, 988 (N.D. Ill. 1983). Yet, the Federal Rules of Civil Procedure expressly authorize a defense alleging a failure to state a claim.  See Builders Bank v. First Bank & Trust Company of Illinois, 2004 WL 626827, at *2 (N.D. Ill. Mar. 25, 2004); Ring v. Bd. of Educ., 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004); Mendrala v. Crown Mortgage Co., 1990 WL 60705, at *3 (N.D. Ill. Apr. 23, 1990).  Form 20 of the Rules' Appendix of Forms includes the following among its list of "model" affirmative defenses: "The complaint fails to state a claim against defendant upon which relief can be granted." Fed. R. Civ. P. Appx.

---

[2]It is not clear whether the correct spelling is "Bachman" or "Bachmann."  Defendants use both variations in their response to plaintiffs' motion.

Form 20. And Federal Rule of Civil Procedure 84 provides: "The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84. Under the plain language of Rule 84 and Form 20, defendants may plead an affirmative defense alleging a failure to state a claim.

However, "[e]ven those courts that have allowed a party to assert a defense of failure to state a claim . . . have not read the Federal Rules so liberally as to allow the bare recitation of the legal standard ('failure to state a claim') without a short and plain statement of the basis for the defense, as is required by Rule 8(a)." Builders Bank, 2004 WL 626827, at *3. Here, the first part of the defense simply parrots the language of Rule 12(b)(6) and gives plaintiffs no notice as to *why* the complaint fails to state a claim. It is therefore inadequate under Rule 8(a).

The second part of the defense asserts that the counts against Bachmann fail to state a claim because a company's officers and shareholders are not personally liable for the company's alleged infringement. This assertion is adequately pled under Rule 8(a), but it is not a proper "failure to state a claim" defense. The complaint alleges that liability attaches to Bachmann because he "directed, controlled, actively participated in and benefit[t]ed from the conduct of HBI." (Compl., ¶ 4.) In Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (1926), the Seventh Circuit held that

a corporate officer may, upon a "special showing," be liable for the trademark infringements of the corporation:

> It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

Dangler, 11 F.2d at 947. Dangler remains good law. See Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 468 F.2d 225 (7th Cir. 1972); Powder Power Tool Corp v. Powder Actuated Tool Co., 230 F.2d 409 (7th Cir. 1956); Peaceable Planet, Inc. v. Ty, Inc., 185 F.Supp.2d 893, 896 (N.D. Ill. 2002); Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F.Supp.2d 1009 (N.D. Ill. 1998); Cooper Indus. Inc. v. Juno Lighting Inc., 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986). Therefore, plaintiffs' claim that Bachmann is personally liable because he "directed" and "actively participated" in the infringement is legally sound. Against this, Bachmann's "defense" that officers and shareholders are not answerable for a corporation's infringements is essentially an argument that plaintiffs cannot meet their burden of proof under Dangler. Defendants are of course free to make this argument, but it is not an affirmative defense for "failure to state a claim." The first affirmative defense is stricken in its entirety.

The third affirmative defense reads: "Plaintiffs' delay in bringing their claims, actions, failure to act and representations to HBI and others bar their claims by acquiescence." Plaintiffs acknowledge that acquiescence is a defense to a trademark infringement claim. See TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 885 (7th Cir. 1997) (acquiescence is a defense when "the trademark owner, by affirmative word or deed, conveys its implied consent to another"). They contend, however, that the defense fails to provide adequate notice of the basis for the claim. Defendants respond that the defense is sufficiently pled, i.e., acquiescence has been demonstrated by "[p]laintiffs' delay in bringing their claims, actions, failure to act and representations to HBI." We agree with plaintiffs. The defense, in its present form, gives plaintiffs no more notice of the nature of defendants' claim than had the defense stated "the action is barred by acquiescence." After all, how else does one acquiesce other than by "delay," "actions," a "failure to act," or "representations"? The defense provides no factual allegation which, if true, would establish that plaintiffs gave defendants their "implied consent" to use the DRUM and STRONG BOX marks. Because the third affirmative defense is a "bare-bones conclusion," it must be stricken. See Heller, 883 F.2d at 1295.

For their fourth affirmative defense, defendants allege that "[p]laintiffs' delay in bringing their claims bar their claims

by applicable statutes of limitations." Plaintiffs argue that this defense is legally untenable because Lanham Act claims are not subject to a statute of limitations. Parties defending Lanham Act claims must rely instead on a laches defense. <u>See</u> <u>Hot Wax v. Turtle Wax, Inc.</u>, 191 F.3d 813, 821 (7th Cir. 1999). Defendants counter that even if statutes of limitations do not apply to the Lanham Act, the statutes are relevant to the court's determination of whether a presumption of laches should apply. <u>See</u> <u>Chattanoga Mfg., Inc. v. Nike, Inc.</u>, 301 F.3d 789, 793-94 (7th Cir. 2002). This is true, but any argument regarding the statutes' relevance to a laches inquiry is preserved by defendants' twelfth affirmative defense which properly asserts a laches defense. The fourth affirmative defense is stricken as to the Lanham Act counts. It will stand, however, as to the state law counts.

The fifth affirmative defense avers that "[p]laintiffs' alleged marks 2 IN 1 and STRONG BOX are descriptive or generic." First, as noted above, the complaint does allege any present infringement of the 2 IN 1 mark. Whether the 2 IN 1 mark is descriptive or generic is irrelevant to whether defendants are infringing on the DRUM or STRONG BOX marks. The allegation related to the 2 IN 1 mark is stricken.

With respect to the STRONG BOX mark, plaintiffs contend that the defense is flawed because the mark is incontestable. It is true that defendants may not challenge an incontestable mark on

the ground that it is merely descriptive – an incontestable mark is conclusively valid.  See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 201 (1985).  However, an alleged infringement of an incontestable mark *may* be defended on the ground that it is, or has become, the generic term for the product.  See Aero Products International, Inc. v. Intex Recreation Corp., 2003 WL 151936, at *5 (N.D. Ill. Jan. 21, 2003).  "Whether a term is generic or can be trademarked is a question of fact."  Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 300 (7th Cir. 1998).  Moreover, defendants' claim that the STRONG BOX mark is descriptive or generic may be relevant to the likelihood of confusion analysis.  See Munters Corp. v. Matsui America, Inc., 909 F.2d 250, 252 (7th Cir. 1990) ("*Park 'N Fly* does not preclude consideration of a mark's strength for purposes of determining the likelihood of confusion.").  Because this defense presents legitimate "questions of law or fact" as to the STRONG BOX mark, it will stand as modified.  Heller, 883 F.2d at 1294.

Defendants' sixth affirmative defense states that "HBI's use of the phrase 'strong box' to describe rigid packaging or containers for tobacco products is protected speech under the First Amendment of the U.S. Constitution."  At this early stage, we cannot say with certainty that a First Amendment defense fails as a matter of law.  Therefore, we decline to strike it.

The seventh affirmative defense alleges the following:

> HBI is the owner of the DRUM mark in the
> U.S. HBI has continuously promoted and
> sold, throughout the United States, tobacco
> and tobacco related products in connection
> with the DRUM mark, which use preceded
> Plaintiffs' application to register the DRUM
> mark and Plaintiffs' first use of that mark
> in commerce.

This defense claims that defendants' prior use of the DRUM mark trumps plaintiffs' trademark registration. "Even when a plaintiff has a federally registered trademark, a defendant who in good faith used the trademark continuously from a time prior to a plaintiff's application for registration may have rights to use that mark in the areas in which it had trademark rights prior to the plaintiff's registration application." Pure Imagination, Inc. v. Pure Imagination Studios, Inc., 2004 WL 2222269, at *2 (N.D. Ill. Sept. 30, 2004) (citing Safeway Stores, Inc. v. Safeway Quality Foods, Inc., 433 F.2d 99, 104 (7th Cir. 1970)). Plaintiffs maintain that the defense fails because HBI was at all times a distributor of DRUM-brand products, and a distributor's use of a mark does not grant it any trademark rights. This argument goes to the merits, not to the adequacy of the defense. The seventh affirmative defense is properly pled.

The tenth affirmative defense provides:

> Plaintiffs have, through their failure to
> protect the value of the 2 IN 1 and JOB
> marks or by the discontinuance of their use
> with the intent not to resume use of one or
> more of those marks, abandoned any all
> rights in them.

Again, the complaint does not allege any infringement of the 2 IN 1 or JOB marks. Even if defendants were to prove abandonment of the 2 IN 1 and JOB marks, that would not defeat plaintiffs' claims that defendants infringed on the DRUM and STRONG BOX marks. "[U]nless a defendant's claim, if proved, would negate the liability that the plaintiff seeks to impose, it is not properly pleaded as an affirmative defense." See Sanchez v. La Rosa Del Monte Express, Inc., 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994). The tenth affirmative defense is stricken.[3]

Finally, the thirteenth affirmative defense advances the following:

> Any award of enhanced damages, punitive damages or attorneys' fees against the Defendant in this case would be unconstitutional under the Fifth and Fourteenth Amendments of the United States Constitution ("Due Process") and the Eighth Amendment of the United States Constitution ("Excessive Punishment"), for the following reasons among others: (i) the award is excessive or disproportionate to the award of compensatory damages; (ii) the award is made absent a finding that Defendants' conduct was or is reprehensible; or (iii) the award is made without affording Defendants the safeguards afforded defendants in penal or criminal proceedings, including without limitation the protection against self-incrimination, the right to

---

[3]Should the 2 IN 1 and JOB marks become relevant at some later point in the case, defendants will not be prejudiced by today's ruling. Affirmative defenses, like complaints, are protected by Fed. R. Civ. P. 15(a) which allows courts to grant leave to amend pleadings "freely . . . when justice so requires." American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions LLC, 2002 WL 1008480, at *5 (N.D. Ill. May 16, 2002).

confront adverse witnesses, the requirement
of a unanimous jury, or the application of
the heightened burden of clear and
convincing evidence.

To the extent this defense argues that *any* award of punitive
damages or attorneys' fees is precluded by the Fifth, Eighth and
Fourteenth Amendments, the argument is legally baseless. <u>See</u>
<u>Pacific Mutual Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991). If,
on the other hand, the argument is that a specific award is
unconstitutionally excessive, it seems entirely premature.
Plaintiffs have not cited any authority stating that such a defense
is improper. However, we think it should be stricken because it is
not addressed to any claim but to a hypothetical excessive damage
award that is not requested in the claims that are made. We find
it therefore to be "immaterial" and "impertinent," and it is
stricken. <u>See</u> Fed. R. Civ. P. 12(f).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion to strike
affirmative defenses [22-1] is granted in part, and denied in part.
The sixth and seventh affirmative defenses will stand as presently
pled, the fourth and fifth defenses will stand as modified in this
opinion, and the first, third, tenth and thirteenth defenses are
hereby stricken. The first and third affirmative defenses are
stricken without prejudice to a re-pleading consistent with, and
within 20 days of, this opinion.

DATE:   July 12, 2005

ENTER:

_____

John F. Grady, United States District Judge